COPY

1   Manatt, Phelps & Phillips, LLP
    ROBERT D. BECKER (Bar No. CA 160648)
2   E-mail: rbecker@manatt.com
    BENJAMIN M. KLEINMAN (Bar No. CA 261846)
3   Email: bkleinman@manatt.com
    1841 Page Mill Road, Suite 200
4   Palo Alto, CA  94304-1006
    Telephone:  (650) 812-1300
5   Facsimile:   (650) 213-0260

6   Manatt, Phelps & Phillips, LLP
    SHARI MULROONEY WOLLMAN (Bar No. CA 137142)
7   Email: swollman@manatt.com
    11355 W. Olympic Boulevard
8   Los Angeles, CA  90064
    Telephone:  (310) 312-4000
9   Facsimile:   (310) 312-4224

10  *Attorneys for Plaintiff*
    M. L. Kishigo Manufacturing Co.

11

12              UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT

14

15  M. L. KISHIGO MANUFACTURING          Case No. SACV12-277-DOC(MLGx)
    COMPANY, a California Corporation,
16                                        **COMPLAINT FOR**
             Plaintiff,                   **DECLARATORY JUDGMENT**
17
         vs.                              DEMAND FOR JURY TRIAL
18
    CAROLINA SAFETY
19  ACQUISITION, LLC, a Tennessee
    Corporation,
20
             Defendant.
21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff M. L. Kishigo Manufacturing Company ("Kishigo" or "Plaintiff") hereby alleges for its Complaint against defendant Carolina Safety Acquisition, LLC ("Defendant") as follows:

### Nature of the Action

1.  This is a declaratory judgment action in which Kishigo seeks a determination that it does not infringe U.S. Patent No. 7,735,151 ("the Patent") under 35 U.S.C. § 271 and that the Patent is invalid under at least 35 U.S.C. §§ 102, 103, and/or 112.

### Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over the matters complained of under 28 U.S.C. §§ 1331 and 1338 and under 28 U.S.C. §§ 2201 and 2202.

3.  Upon information and belief, Defendant is subject to personal jurisdiction in this Court because it does business in this District, including but not limited to, by offering and providing goods and services in this District and/or by licensing the Patent to those who provide goods and services in this District.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because substantial parts of the events or omissions giving rise to Kishigo's claims occurred in this judicial district.

### Parties

5.  Plaintiff Kishigo was established in California in 1971 and continues to be one of the nation's premier providers of safety and high visibility apparel for use by uniformed workers and those in need of industrial, clean-room, fire-resistant, or other safety apparel. Kishigo has its principal place of business at 2901 S. Daimler, Santa Ana, CA 92705.

6.  On information and belief, Defendant Carolina Safety Acquisition, LLC has its principal place of business at 5305 Distriplex Farms Drive, Memphis, TN 38141.

### Factual Background

7.     The Patent is entitled "Breakaway Vest" and issued June 15, 2010.  A true and correct copy of the Patent is attached as Exhibit A.

8.     Upon information and belief, Defendant is now the owner by assignment of the Patent.

9.     On February 2, 2012, Defendant sent Kishigo a letter alleging that certain Kishigo products infringed the Patent, extending the possibility that Kishigo obtain a license to the Patent, and threatening to "file suit" (Ex. B, p. 3) if Kishigo did not respond within 14 days.  A true and correct copy of the letter is attached as Exhibit B.

10.     Kishigo asserts that no claim of the Patent is both valid and infringed.

11.     Based on the foregoing, there is an actual controversy between Kishigo and Defendant concerning non-infringement and invalidity of the Patent.

12.     In light of the threat of an infringement suit as outlined in Defendant's letter, this controversy is sufficiently immediate and real to justify the issuance of a declaratory judgment.

### Count I: Declaratory Judgment of Noninfringement

13.     Kishigo incorporates by reference the allegations of paragraphs 1-12, above.

14.     Kishigo has not infringed, and is not now infringing, any valid claim of the Patent.

15.     There is a justiciable controversy between Kishigo and Defendant regarding the noninfringement of the Patent, and Kishigo is entitled to a declaratory judgment that will finally resolve the issue.

### Count II: Declaratory Judgment of Invalidity

16.     Kishigo incorporates by reference the allegations of paragraphs 1-12, above.

17.  The claims of the Patent are invalid for failing to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 102, 103 and 112.

18.  There is a justiciable controversy between the parties regarding the invalidity of the Patent, and Kishigo is entitled to a declaratory judgment that will finally resolve this issue.

## Claim for Relief

19.  Kishigo seeks the following relief:

(a)  A declaration that Kishigo has not infringed and is not infringing the Patent;

(b)  A declaration that the Patent is invalid;

(c)  An order declaring Kishigo the prevailing party and that this is an exceptional case, and awarding Kishigo its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

(d)  An order that Defendant be ordered to pay all costs associated with this action; and

(e)  That Kishigo be granted any other relief that the Court deems just and proper.

Dated:    February 21, 2012           Manatt, Phelps & Phillips, LLP


                                      By:
                                      Robert D. Becker
                                      Shari Mulrooney Wollman
                                      Benjamin M. Kleinman

                                      *Attorneys for Plaintiff*
                                      M. L. KISHIGO
                                      MANUFACTURING COMPANY

## JURY DEMAND

Kishigo hereby demands a jury trial on all claims herein.

Dated:     February 21, 2012                    Manatt, Phelps & Phillips, LLP


By: _____

Robert D. Becker
Shari Mulrooney Wollman
Benjamin M. Kleinman

*Attorneys for Plaintiff*
M. L. KISHIGO
MANUFACTURING COMPANY

301407130.1

4          COMPLAINT FOR DECLARATORY JUDGMENT

# Exhibit A

US007735151B1

(12) **United States Patent**
Young et al.

(10) Patent No.: **US 7,735,151 B1**
(45) Date of Patent: **Jun. 15, 2010**

(54) **BREAKAWAY VEST**

(76) Inventors: **Philip Young**, P.O. Box 2276, Thomasville, NC (US) 27361; **Tamara L. Joyce**, P.O. Box 2276, Thomasville, NC (US) 27361

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/502,611**

(22) Filed: **Aug. 10, 2006**

(51) **Int. Cl.**
*A41D 3/02* (2006.01)

(52) **U.S. Cl.** .................................................. 2/96

(58) **Field of Classification Search** .................. 2/48, 2/69, 102, 456, 460–463, 467, 44, 45, 50, 2/51, 2.5, 94, 108, 326, 327–334, 96
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,127,106 A * | 7/1992 | Aldridge | 2/81 |
| 5,495,621 A | 3/1996 | Kibbee | 2/2.5 |
| 5,653,244 A * | 8/1997 | Shaw | 128/882 |
| 5,799,329 A * | 9/1998 | Hauschild | 2/102 |
| 5,890,227 A | 4/1999 | Brown | 2/102 |

| | | | |
|---|---|---|---|
| D440,716 S | 4/2001 | Lesley | D29/101 |
| 6,820,280 B1 * | 11/2004 | Atallah et al. | 2/102 |
| 6,948,188 B2 * | 9/2005 | D'Annunzio | 2/102 |
| 7,152,246 B2 * | 12/2006 | Infante | 2/22 |

OTHER PUBLICATIONS

MBTA Safety Vest diagram; received by applicant Apr. 15, 1999.
Photograph of a Carolina Safety Vest, sold Sep. 2000.
Wisconsin Dept. of Transportation Traffic Vest; received by applicant Feb. 23, 1999.

* cited by examiner

*Primary Examiner*—Tejash Patel
(74) *Attorney, Agent, or Firm*   MacCord Mason PLLC

(57) **ABSTRACT**

A safety vest is claimed and described. In preferred embodiments, the vest includes a front panel formed from a first section and a second section. The vest also includes a donning fastener having a first and second side. The first donning fastener side connects to the first section of the front panel. The vest also includes a safety fastener having a first safety fastener side and a second safety fastener side. In most embodiments, the first side of the safety fastener is positioned on the second donning fastener side. The second safety fastener side is connected to the second section of the front panel. The vest can be donned, secured, and removed with the donning fastener and, because of safety fasteners, will safely break away from a wearer under tension.

**17 Claims, 5 Drawing Sheets**





**FIG. 1**



FIG. 2



**FIG. 3**



FIG. 4

Case 8:12-cv-00277-DOC-MLG   Document 1   Filed 02/21/12   Page 12 of 41   Page ID #:12



FIG. 5

US 7,735,151 B1

1

## BREAKAWAY VEST

### BACKGROUND

(1) Field

This disclosure relates generally to garments, and, more particularly, to vests for increased safety.

(2) Related Technology

Traditional breakaway vests are known in the art. While they are commonly designed to increase visibility, they are primarily designed to breakaway from the wearer's body under tension or during a safety emergency. Such a feature is desirable, for example, for police officers or public transit workers who risk having portions of their clothing caught in or on vehicles. If these situations do occur, breakaway vests reduce the risk of workers being dragged by breaking away from the wearer's body under tension. Breakaway garments and vests are also desirable for machine workers, e.g., press operators, trash collectors, or wood chip operators, who risk having clothing caught in machinery. For these types of workers, becoming entangled with machinery may result in extreme bodily harm, if not death.

Some traditional breakaway vests are based on a pull-over design. For a variety of reasons, however, (e.g., bulky uniforms, excessive equipment and accessories, inflexibility) pull-over vests may not be easy or practical for all wearers to put on and take off. Because of this inconvenience, many who should be wearing a safety vest at all times do not. This oversight can lead to injury or loss of life.

To overcome the aforementioned problem, others open the vest at its safety fasteners, which are commonly hook and loop fasteners, e.g., VELCRO, in an attempt to ease donning the garment. This technique, however, is time consuming because it is difficult to properly align the various hook and loop portions of the garment. Because of these problems, many may not wear their breakaway vests at all times, or may not wear their vests properly, which may lead to injury or loss of life.

Thus what is needed is a breakaway garment that provides safety features of traditional garments, but that further reduces the risk of injury and loss of life by being easy and comfortable to put on properly, secure, and take off.

### SUMMARY OF THE DISCLOSURE

This disclosure describes breakaway garments designed to improve safety and reduce the risk of injury and loss of life. The garment includes a front panel including a front upper portion and a front lower portion. The front panel includes at least a pair of sections joined by a donning fastener. The donning fastener is configured to facilitate donning, securing, and removing the garment. The front panel also includes a first safety fastener configured to allow the front panel to separate under tension above a breakaway threshold, which may be, for example, a pound of tension. In this embodiment, a back panel having a back upper portion and a back lower portion is coupled to the front panel.

In most embodiments, the donning fastener is a zipper and the first safety fastener is a hook and loop fastener. In many embodiments, the front and back panels are coupled by a plurality of second safety fasteners, which preferably include a pair of upper safety fasteners configured to connect the upper front portion of the front panel to the upper back portion of the back panel, and a pair of lower safety fasteners configured to connect the lower front portion of the front panel to the lower back portion of the back panel. Preferably, the plurality of second safety fasteners are hook and loop fasteners.

2

The vests may be multi-colored, and further may include fluorescent orange and fluorescent lime-yellow portions, or other high visibility colors. In addition, the vests may include a plurality of reflective portions, e.g., chevrons, and, optionally, pockets or pen and microphone holders. The disclosure also provides vests that are ANSI/ISEA 107-2004 Class 2 compliant, and also compliant with the possible future ANSI/ISEA 207-200X Public Safety Vest Standard.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front view of an embodiment of a breakaway garment;

FIG. 2 is a front view a panel of the embodiment;

FIG. 3 is a front view of a panel of the embodiment;

FIG. 4 is a back view of the panel shown in FIG. 3; and

FIG. 5 is a side view of the embodiment on a wearer.

### DESCRIPTION OF EMBODIMENTS

In the following description, like reference characters designate like or corresponding parts throughout the several views. Also in the following description, such terms as "forward," "rearward," "left," "right," "upwardly," "downwardly," and the like are words of convenience and are not to be construed as limiting terms. Also, the illustrations and descriptions are for disclosing various embodiments of a breakaway vest and do not limit the vest to any particular embodiment disclosed.

FIG. 1 shows one embodiment of a safety garment 10 of the present invention. While the garment depicted is a vest, and in particular a breakaway vest, the present invention is inclusive of other breakaway garments as well, for example, breakaway jackets. Vest 10 includes front panel 4 (also shown individually in FIG. 2) coupled to back panel 7 (also shown individually in FIG. 3). Front panel 4 includes upper portion 20 and bottom portion 22, and back panel 7 includes upper portion 24 (see FIG. 3) and bottom portion 26 (see FIG. 3).

Front panel 4 includes a pair of front panel sections, depicted here as section 42 and section 43, which are joined by donning fastener 51. Donning fastener 51 is configured to facilitate donning, securing, and removing the garment, and is, in this embodiment, depicted as zipper 51. Zipper 51 may be any of the variety of zippers available, and may be for example, a tooth or coil style zipper and may be locking or non-locking. Preferably zipper 51 is a separating zipper. Zipper 51 includes a first tape 52(a) on one side of the zipper and a second tape 52(b) on the opposite side of the zipper. While, as depicted, first tape 52(a) is shown on the left of the zipper and second tape 52(b) is shown on the right of the zipper, "first" and "second" are not intended to impart any positional limitation. For example, in other embodiments, tape 52(a) may be the second tape and tape 52(b) may be the first tape. In other embodiments, the donning fasteners can be conventional means for closing a garment, but not elongated strips of hook and loop fasteners. For example, others may desire buttons, snaps, hooks, buckles, or loops, all of which are within the scope of the present invention.

FIG. 2 shows a first safety fastener 62 of the present embodiment. First safety fastener 62 is configured to allow panels to separate under tension above a breakaway threshold. While the tension may vary from embodiment to embodiment, in some embodiments 1 pound, 2 pounds, 3 pounds, or 4 pounds of tension may be ideal. Still others may prefer more or less tension. Somewhat similarly, others may desire a breakaway threshold tension based on current or future ANSI standards or recommendations. Those skilled in the art will

US 7,735,151 B1

3

recognize that the threshold tension may be adjusted, for example, in hook and loop embodiments, by increasing the number of hooks and loops per unit of area, or by using larger, stronger, or more rigid hook and loop fasteners.

In the embodiment of FIG. 2, first safety fastener is a hook and loop fastener. e.g. VELCRO, and includes a first tape 62(a) and a second tape 62(b). The "first" and "second" adjectives are used for descriptive purposes and are not intended to impart any numeric or positional limitations to first safety fasteners of the present invention. Zipper 51 is connected at first tape 52(a) to the first section 42 of front panel 4. Hook and loop fastener 62, is connected at side 62(a) to the second tape 52(b) of zipper 51. The second side of hook and loop fastener 62(b) is connected to the second section 43 of front panel 4. When in use, hook and loop side 62(b) is fastened to hook and loop side 62(b) until it is torn away by tension. Those skilled in the art will recognize that either 62(a) or 62(b) may be either the hook or the loop portion of the hook and loop fastener. Zipper 51 is used to put on and remove the vest during everyday use. Such a configuration allows for the safety garment to be easily donned and secured over bulky uniforms and clothing, while at the same time increases a wearer's safety by allowing the garment to be easily torn off in the event it becomes entangled.

While in the preferred embodiments, front panels have a pair of sections, e.g., first section 42 and second section 43, other embodiments of the invention may have additional sections. For example, some embodiments of the invention may include three sections in the front panel, wherein, for example, the donning fastener connects a first and second section and wherein the safety fastener connects a second and third section. All such embodiments are considered to be within the scope of the present invention.

In preferred embodiments, the front and back panels of the garments of the present invention are coupled by a plurality of second safety fasteners. Preferably, the plurality of second safety fasteners includes a pair of upper safety fasteners 92 and 93, and a pair of lower safety fasteners 94 and 95, configured to connect front panel 4 with back panel 7. In the preferred embodiment, the plurality of second safety fasteners include hook and loop fasteners, with mating portions of hook and loops shown generally as horizontal strips 64, 65, 71, 72, 73, 74, 77 and 78 (seen in various figures). As shown in FIG. 1, in some embodiments, it may be desirable to position upper safety fasteners 92 and 93 drop-shoulder, for example, to increase comfort and prevent safety fasteners from snagging of uniforms or tools located about uniforms.

Preferably, lower safety fasteners 94 and 95 connect the lower front portion 22 of panel 4 to the lower back portion 26 of panel 7 with arms 12 and 13 (also visible in FIG. 3), which are positioned to wrap around a wearer's waist. While arms are preferable for practicing certain embodiments of the present invention, for example, for allowing a single vest to fit a variety of wearers wearing a variety of clothing or uniforms, in other embodiments front portion 22, may connect to back 55 portion 26 directly, e.g., without the use of arms.

FIG. 5 shows vest 10 on a wearer 106, who may be, for example, a police officer. Vest 10 includes tool access 38 that is defined, at least in part, by either the front or back panel. Tool access 38 is configured to allow a wearer to access tools, e.g., gun 39, located on the wearer's belt, hip or lower leg region, and allow vest 10 to be torn away under tension without becoming caught on tools located in the same region. In the preferred embodiment shown, the depicted tool access 38 is defined at its sides by both portion 34 of the front panel and by portion 37 of the back panel, and to some extent, at its top by arm 12. Preferably, tool access 38 has a height of about

4

7 inches and width of about 8 inches, which allows wearers to access multiple, or a variety of different, tools. While only one tool access is shown, the opposite side of vest 10 may include a similar tool access. Others may wish to practice the present invention using other configurations for the tool access.

Most embodiments of the garment of the present invention may also include high-visibility coloring or a reflective portion, and many embodiments, e.g., high visibility safety vests, will preferably include both high visibility coloring and reflective tape. For example, referring to the vest shown in FIG. 1, portion 46 may be considered to be any high visibility coloring, and will preferably be a high visibility coloring in compliance with ANSI safety standards, and tape 83 may be considered to be reflective tape. Other portions of the vest may also be considered to be either high visibility or reflective as well. Referring to the back view of panel 7 shown in FIG. 4, other reflective and high visibility portions may be seen. For example, portions 57 and 58 may be high visibility, while a portions 88 and 89, which are shown in chevron formation, may be reflective tape.

FIG. 4 also shows a band of material 45 is secured along four axes 46, 47, 48 and 49 to the panel 7 to form a clip capable of receiving and retaining items such as radio microphones and pens.

Numerous characteristics and advantages have been set forth in the foregoing description, together with details of structure and function. The novel features are pointed out in the appended claims. The disclosure, however, is illustrative only, and changes may be made in detail, especially in matters of shape, size, and arrangement of parts, within the principle of the invention, to the full extent indicated by the broad general meaning of the terms in which the general claims are expressed.

We claim:

1. A safety upper torso garment comprising:

(a) a front panel extending from about the waist and hip region to about the shoulders, said front panel including

(i) a front upper portion in the vicinity of said shoulder region and a front lower portion in the vicinity of said hip region,

(ii) at least a pair of separating sections being configured to extend from about said waist and hip region to about said shoulders,

(iii) a donning fastener including two complementary sides configured to releasably fasten to each other, wherein one side of the donning fastener is separable from the garment, wherein said donning fastener is positioned in between said at least a pair of separating sections, wherein said donning fastener extends from about said waist and hip region to about the chest region, and wherein said donning fastener is configured to facilitate donning, securing, and removing the garment, and

(iv) a hook and loop fastener including two sides configured to releasably connect to each other, wherein one side of said hook and loop fastener is connected to said donning fastener and extends substantially along the length of said donning fastener and wherein the other side is connected to one of said separating sections, wherein said hook and loop fastener is configured to allow said front panel sections to separate under tension above a pre-determined breakaway threshold when said donning fastener is in a closed position; and

(b) a back panel having a back upper portion and a back lower portion and coupled to said front panel.

US 7,735,151 B1

5

2. The garment of claim 1, wherein said donning fastener is a zipper.

3. The garment of claim 2, wherein said zipper is a separating zipper and one of said sides of said donning fastener includes a first tape of said zipper and another of said sides of said donning fastener includes a second tape of said zipper.

4. The garment of claim 3, wherein either said first tape or second tape of said zipper is attached to any of said at least two panels by a hook and loop fastener.

5. The garment of claim 1, wherein said front panel is coupled to said back panel by a plurality of second safety fasteners.

6. The garment of claim 5, wherein said plurality of second safety fasteners includes a pair of upper safety fasteners configured to connect said upper front portion to said upper back portion.

7. The garment of claim 6, wherein said pair of upper safety fasteners include hook and loop fasteners.

8. The garment of claim 6, wherein said pair of upper safety fasteners are positioned drop-shouldered.

9. The garment of claim 5, wherein said plurality of second safety fasteners includes a pair of lower safety fasteners configured to connect said lower front portion to said lower back portion.

10. The garment of claim 9, wherein said lower safety fasteners include a pair of arms extending between said first panel and said second panel, and positioned to wrap around a wearer's waist.

11. The garment of claim 9, wherein said lower safety fasteners include hook and loop fasteners.

12. The garment of claim 1, further including a tool access defined, at least in part, by either said front or back panel, thereby allowing a wearer to access tools.

13. The garment of claim 12, wherein said tool access has a height of about 7 inches and width of about 8 inches.

6

14. The garment of claim 1, wherein said panels include a high-visibility coloring.

15. The garment of claim 1, wherein said panels include a reflective portion.

16. The garment of claim 1, wherein said garment is a vest.

17. A safety vest comprising:

(a) a front panel formed from a first section and a second section each extending from about the waist and hip region to about the shoulders, said front panel having an upper front portion and a lower front portion;

(b) a zipper having a first tape and a second tape, wherein said first tape is connected to said first section of said panel;

(c) a hook and loop fastener having a first fastener side and a second fastener side, wherein said first fastener side is positioned on said second zipper tape and wherein said second fastener side is connected to said second section of said front panel;

(d) a back panel having

a back upper portion releasably coupled to said front upper portion by a pair of upper second safety fasteners and

a back lower portion releasably coupled to said front lower portion by a pair of lower second safety fasteners, thereby allowing said vest to be donned and secured with said zipper being configured to allow the front panel to break away under tension above a breakaway threshold when said zipper is in a closed position; and

a tool access defined, at least in part, by either said front or back panel, thereby allowing a wearer to access tools.

*   *   *   *   *

# EXHIBIT B

Paul B. Billings, Jr.
5305 Distriplex Farms Drive
Memphis, Tennessee 38141-8231



**PAUL
BILLINGS
LAW**

Phone (901) 881-9515
Toll Free Fax (866) 772-4244
Email: paul@paulbillingslaw.com
http://www.paulbillingslaw.com

February 2, 2012

ML Kishigo Manufacturing Company
2901 S. Daimler
Santa Ana, CA 92705                    via fax to (949) 852-0263
Attn: Greg Hayward, President          via email to info@mlkishigo.com

Re:   Carolina Safety Acquisition, LLC – Protective Industrial Products, Inc.
      Patent Infringing Safety Vests – ML Kishigo models (1505, 1506, 1552 & 1553)

Dear Mr. Hayward:

I represent Carolina Safety Acquisition, LLC ("CSA), which recently acquired U.S. Patent # 7735151
("the Breakaway Vest Patent," attached for your review) from Phillip Young and Tamara Joyce. Also
attached is a copy of the patent assignment to my client, with a printout of the USPTO recordation of the
assignment.

Figures 1 and 2, illustrating one example of a garment covered by the Breakaway Vest Patent, are
provided below for your convenience:



It has recently come to our attention that ML Kishigo sells at least four (4) safety vests, all of which
include a specific breakaway zipper closure on the front of the vest, as pictured below:




## PAUL BILLINGS LAW

ML Kishigo Manufacturing Company
February 2, 2012
Page 2 of 3




As shown above, ML Kishigo's breakaway safety vests include a front panel extending from about the waist and hip region to about the shoulders. The front panel includes a pair of separating sections. The front panel also includes a donning fastener positioned between the left and right sections in the form of a zipper that includes two complementary sides configured to releasably fasten to each other.

ML Kishigo's breakaway safety vests clearly infringe upon at least claims 1-8, 10-11 and 13-17 of the Breakaway Vest Patent. Accordingly, CSA hereby demands that ML Kishigo cease and desist from selling, distributing or manufacturing its model 1505, 1506, 1552 & 1553 safety vests.

As you know, in cases of patent infringement, federal statutes provide that a patent owner may obtain injunctive relief against infringers (35 U.S.C. §283) and can recover up to three times the amount of damages found adequate to compensate for the infringement. See 35 U.S.C. §284. The continued sale of the infringing safety vests could subject ML Kishigo to treble damages for willful infringement. Also, the prevailing party in a patent infringement suit may be entitled to recover its attorneys' fees from the other side (35 U.S.C. §285), and in some cases, the attorneys' fees will exceed the amount of the infringement damages. At the very least, CSA would be entitled to recover from you a reasonable royalty or all your profits from the sale of any safety vests that infringe CSA's patent. See 35 U.S.C. §284.

I may be able to convince my client to license your company so that it can continue to sell the aforementioned safety vest models, provided ML Kishigo wants to continue to sell the vests and provided that we also reach an agreement on damages for past infringement. In that regard, ML Kishigo will need to provide a sworn affidavit which specifies the number and selling price for each of the aforementioned safety vest models it sold since June 15, 2010 (the date US Patent #7735151 was issued). After I receive that information from you, I will let you know how much my client is willing to accept from ML Kishigo to settle its claim for past infringement, and we can also start discussing a license agreement.

**PAUL BILLINGS LAW**

ML Kishigo Manufacturing Company
February 2, 2012
Page 3 of 3

I look forward to hearing from you very soon.  If I don't hear from you or your attorney within fourteen (14) days, I will presume that ML Kishigo has no interest in proceeding as outlined above, and my client will file suit to enforce its patent rights and will seek all appropriate damages and its attorneys' fees. Please do not hesitate to contact me with any questions.

Sincerely,

Paul Billings Law

Paul B. Billings, Jr.

Enclosures

US007735151B1

(12) **United States Patent**
Young et al.

(10) Patent No.: **US 7,735,151 B1**
(45) Date of Patent: **Jun. 15, 2010**

(54) **BREAKAWAY VEST**

(76) Inventors: **Philip Young**, P.O. Box 2276, Thomasville, NC (US) 27361; **Tamara L. Joyce**, P.O. Box 2276, Thomasville, NC (US) 27361

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/502,611**

(22) Filed: **Aug. 10, 2006**

(51) Int. Cl.
*A41D 3/02* (2006.01)

(52) U.S. Cl. .......................................................... **2/96**

(58) Field of Classification Search ....................... 2/48, 2/69, 102, 456, 460–463, 467, 44, 45, 50, 2/51, 2.5, 94, 108, 326, 327–334, 96
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,127,106 | A | * | 7/1992 | Aldridge ................. | 2/81 |
| 5,495,621 | A | | 3/1996 | Kibbee ................... | 2/2.5 |
| 5,653,244 | A | * | 8/1997 | Shaw .................... | 128/882 |
| 5,799,329 | A | * | 9/1998 | Hauschild ............... | 2/102 |
| 5,890,227 | A | | 4/1999 | Brown ................... | 2/102 |

| | | | | | |
|---|---|---|---|---|---|
| D440,716 | S | | 4/2001 | Lesley .................. | D29/101 |
| 6,820,280 | B1 | * | 11/2004 | Atallah et al. ........... | 2/102 |
| 6,948,188 | B2 | * | 9/2005 | D'Annunzio ............ | 2/102 |
| 7,152,246 | B2 | * | 12/2006 | Infante ................. | 2/22 |

OTHER PUBLICATIONS

MBTA Safety Vest diagram; received by applicant Apr. 15, 1999.
Photograph of a Carolina Safety Vest, sold Sep. 2000.
Wisconsin Dept. of Transportation Traffic Vest; received by applicant Feb. 23, 1999.

\* cited by examiner

*Primary Examiner*—Tejash Patel
(74) *Attorney, Agent, or Firm*   MacCord Mason PLLC

(57) **ABSTRACT**

A safety vest is claimed and described. In preferred embodiments, the vest includes a front panel formed from a first section and a second section. The vest also includes a donning fastener having a first and second side. The first donning fastener side connects to the first section of the front panel. The vest also includes a safety fastener having a first safety fastener side and a second safety fastener side. In most embodiments, the first side of the safety fastener is positioned on the second donning fastener side. The second safety fastener side is connected to the second section of the front panel. The vest can be donned, secured, and removed with the donning fastener and, because of safety fasteners, will safely break away from a wearer under tension.

**17 Claims, 5 Drawing Sheets**





FIG. 1



**FIG. 2**



FIG. 3



**FIG. 4**



FIG. 5

US 7,735,151 B1

1

## BREAKAWAY VEST

### BACKGROUND

(1) Field

This disclosure relates generally to garments, and, more particularly, to vests for increased safety.

(2) Related Technology

Traditional breakaway vests are known in the art. While they are commonly designed to increase visibility, they are primarily designed to breakaway from the wearer's body under tension or during a safety emergency. Such a feature is desirable, for example, for police officers or public transit workers who risk having portions of their clothing caught in or on vehicles. If these situations do occur, breakaway vests reduce the risk of workers being dragged by breaking away from the wearer's body under tension. Breakaway garments and vests are also desirable for machine workers, e.g., press operators, trash collectors, or wood chip operators, who risk having clothing caught in machinery. For these types of workers, becoming entangled with machinery may result in extreme bodily harm, if not death.

Some traditional breakaway vests are based on a pull-over design. For a variety of reasons, however, (e.g., bulky uniforms, excessive equipment and accessories, inflexibility) pull-over vests may not be easy or practical for all wearers to put on and take off. Because of this inconvenience, many who should be wearing a safety vest at all times do not. This oversight can lead to injury or loss of life.

To overcome the aforementioned problem, others open the vest at its safety fasteners, which are commonly hook and loop fasteners, e.g., VELCRO, in an attempt to ease donning the garment. This technique, however, is time consuming because it is difficult to properly align the various hook and loop portions of the garment. Because of these problems, many may not wear their breakaway vests at all times, or may not wear their vests properly, which may lead to injury or loss of life.

Thus what is needed is a breakaway garment that provides safety features of traditional garments, but that further reduces the risk of injury and loss of life by being easy and comfortable to put on properly, secure, and take off.

### SUMMARY OF THE DISCLOSURE

This disclosure describes breakaway garments designed to improve safety and reduce the risk of injury and loss of life. The garment includes a front panel including a front upper portion and a front lower portion. The front panel includes at least a pair of sections joined by a donning fastener. The donning fastener is configured to facilitate donning, securing, and removing the garment. The front panel also includes a first safety fastener configured to allow the front panel to separate under tension above a breakaway threshold, which may be, for example, a pound of tension. In this embodiment, a back panel having a back upper portion and a back lower portion is coupled to the front panel.

In most embodiments, the donning fastener is a zipper and the first safety fastener is a hook and loop fastener. In many embodiments, the front and back panels are coupled by a plurality of second safety fasteners, which preferably include a pair of upper safety fasteners configured to connect the upper front portion of the front panel to the upper back portion of the back panel, and a pair of lower safety fasteners configured to connect the lower front portion of the front panel to the lower back portion of the back panel. Preferably, the plurality of second safety fasteners are hook and loop fasteners.

2

The vests may be multi-colored, and further may include fluorescent orange and fluorescent lime-yellow colors, or other high visibility colors. In addition, the vests may include a plurality of reflective portions, e.g., chevrons, and, optionally, pockets or pen and microphone holders. The disclosure also provides vests that are ANSI/ISEA 107-2004 Class 2 compliant, and also compliant with the possible future ANSI/ISEA 207-200X Public Safety Vest Standard.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front view of an embodiment of a breakaway garment;

FIG. 2 is a front view a panel of the embodiment;

FIG. 3 is a front view of a panel of the embodiment;

FIG. 4 is a back view of the panel shown in FIG. 3; and

FIG. 5 is a side view of the embodiment on a wearer.

### DESCRIPTION OF EMBODIMENTS

In the following description, like reference characters designate like or corresponding parts throughout the several views. Also in the following description, such terms as "forward," "rearward," "left," "right," "upwardly," "downwardly," and the like are words of convenience and are not to be construed as limiting terms. Also, the illustrations and descriptions are for disclosing various embodiments of a breakaway vest and do not limit the vest to any particular embodiment disclosed.

FIG. 1 shows one embodiment of a safety garment 10 of the present invention. While the garment depicted is a vest, and in particular a breakaway vest, the present invention is inclusive of other breakaway garments as well, for example, breakaway jackets. Vest 10 includes front panel 4 (also shown individually in FIG. 2) coupled to back panel 7 (also shown individually in FIG. 3). Front panel 4 includes upper portion 20 and bottom portion 22, and back panel 7 includes upper portion 24 (see FIG. 3) and bottom portion 26 (see FIG. 3).

Front panel 4 includes a pair of front panel sections, depicted here as section 42 and section 43, which are joined by donning fastener 51. Donning fastener 51 is configured to facilitate donning, securing, and removing the garment, and is, in this embodiment, depicted as zipper 51. Zipper 51 may be any of the variety of zippers available, and may be for example, a tooth or coil style zipper and may be locking or non-locking. Preferably zipper 51 is a separating zipper. Zipper 51 includes a first tape 52($a$) on one side of the zipper and a second tape 52($b$) on the opposite side of the zipper. While, as depicted, first tape 52($a$) is shown on the left of the zipper and second tape 52($b$) is shown on the right of the zipper, "first" and "second" are not intended to impart any positional limitation. For example, in other embodiments, tape 52($a$) may be the second tape and tape 52($b$) may be the first tape. In other embodiments, the donning fasteners can be conventional means for closing a garment, but not elongated strips of hook and loop fasteners. For example, others may desire buttons, snaps, hooks, buckles, or loops, all of which are within the scope of the present invention.

FIG. 2 shows a first safety fastener 62 of the present embodiment. First safety fastener 62 is configured to allow panels to separate under tension above a breakaway threshold. While the tension may vary from embodiment to embodiment, in some embodiments 1 pound, 2 pounds, 3 pounds, or 4 pounds of tension may be ideal. Still others may prefer more or less tension. Somewhat similarly, others may desire a breakaway threshold tension based on current or future ANSI standards or recommendations. Those skilled in the art will

3

recognize that the threshold tension may be adjusted, for example, in hook and loop embodiments, by increasing the number of hooks and loops per unit of area, or by using larger, stronger, or more rigid hook and loop fasteners.

In the embodiment of FIG. 2, first safety fastener is a hook and loop fastener, e.g. VELCRO, and includes a first tape 62(a) and a second tape 62(b). The "first" and "second" adjectives are used for descriptive purposes and are not intended to impart any numeric or positional limitations to first safety fasteners of the present invention. Zipper 51 is connected at first tape 52(a) to the first section 42 of front panel 4. Hook and loop fastener 62, is connected at side 62(a) to the second tape 52(b) of zipper 51. The second side of hook and loop fastener 62(b) is connected to the second section 43 of front panel 4. When in use, hook and loop side 62(a) is fastened to hook and loop side 62(b) until it is torn away by tension. Those skilled in the art will recognize that either 62(a) or 62(b) may be either the hook or the loop portion of the hook and loop fastener. Zipper 51 is used to put on and remove the vest during everyday use. Such a configuration allows for the safety garment to be easily donned and secured over bulky uniforms and clothing, while at the same time increases a wearer's safety by allowing the garment to be easily torn off in the event it becomes entangled.

While in the preferred embodiments, front panels have a pair of sections, e.g., first section 42 and second section 43, other embodiments of the invention may have additional sections. For example, some embodiments of the invention may include three sections in the front panel, wherein, for example, the donning fastener connects a first and second section and wherein the safety fastener connects a second and third section. All such embodiments are considered to be within the scope of the present invention.

In preferred embodiments, the front and back panels of the garments of the present invention are coupled by a plurality of second safety fasteners. Preferably, the plurality of second safety fasteners includes a pair of upper safety fasteners 92 and 93, and a pair of lower safety fasteners 94 and 95, configured to connect front panel 4 with back panel 7. In the preferred embodiment, the plurality of second safety fasteners include hook and loop fasteners, with mating portions of hook and loops shown generally as horizontal strips 64, 65, 71, 72, 73, 74, 77 and 78 (seen in various figures). As shown in FIG. 1, in some embodiments, it may be desirable to position upper safety fasteners 92 and 93 drop-shoulder, for example, to increase comfort and prevent safety fasteners from snagging of uniforms or tools located about uniforms.

Preferably, lower safety fasteners 94 and 95 connect the lower front portion 22 of panel 4 to the lower back portion 26 of panel 7 with arms 12 and 13 (also visible in FIG. 3), which are positioned to wrap around a wearer's waist. While arms are preferable for practicing certain embodiments of the present invention, for example, for allowing a single vest to fit a variety of wearers wearing a variety of clothing or uniforms, in other embodiments front portion 22, may connect to back 55 portion 26 directly, e.g., without the use of arms.

FIG. 5 shows vest 10 on a wearer 106, who may be, for example, a police officer. Vest 10 includes tool access 38 that is defined, at least in part, by either the front or back panel. Tool access 38 is configured to allow a wearer to access tools, e.g., gun 39, located on the wearer's belt, hip or lower leg region, and allow vest 10 to be torn away under tension without becoming caught on tools located in the same region. In the preferred embodiment shown, the depicted tool access 38 is defined at its sides by both portion 34 of the front panel and by portion 37 of the back panel, and to some extent, at its top by arm 12. Preferably, tool access 38 has a height of about

4

7 inches and width of about 8 inches, which allows wearers to access multiple, or a variety of different, tools. While only one tool access is shown, the opposite side of vest 10 may include a similar tool access. Others may wish to practice the present invention using other configurations for the tool access.

Most embodiments of the garment of the present invention may also include high-visibility coloring or a reflective portion, and many embodiments, e.g., high visibility safety vests, will preferably include both high visibility coloring and reflective tape. For example, referring to the vest shown in FIG. 1, portion 46 may be considered to be any high visibility coloring, and will preferably be a high visibility coloring in compliance with ANSI safety standards, and tape 83 may be considered to be reflective tape. Other portions of the vest may also be considered to be either high visibility or reflective as well. Referring to the back view of panel 7 shown in FIG. 4, other reflective and high visibility portions may be seen. For example, portions 57 and 58 may be high visibility, while a portions 88 and 89, which are shown in chevron format, may be reflective tape.

FIG. 4 also shows a band of material 45 is secured along four axes 46, 47, 48 and 49 to the panel 7 to form a clip capable of receiving and retaining items such as radio microphones and pens.

Numerous characteristics and advantages have been set forth in the foregoing description, together with details of structure and function. The novel features are pointed out in the appended claims. The disclosure, however, is illustrative only, and changes may be made in detail, especially in matters of shape, size, and arrangement of parts, within the principle of the invention, to the full extent indicated by the broad general meaning of the terms in which the general claims are expressed.

We claim:

1. A safety upper torso garment comprising:

(a) a front panel extending from about the waist and hip region to about the shoulders, said front panel including

(i) a front upper portion in the vicinity of said shoulder region and a front lower portion in the vicinity of said hip region,

(ii) at least a pair of separating sections being configured to extend from about said waist and hip region to about said shoulders,

(iii) a donning fastener including two complementary sides configured to releasably fasten to each other, wherein one side of the donning fastener is separable from the garment, wherein said donning fastener is positioned in between said at least a pair of separating sections, wherein said donning fastener extends from about said waist and hip region to about the chest region, and wherein said donning fastener is configured to facilitate donning, securing, and removing the garment, and

(iv) a hook and loop fastener including two sides configured to releasably connect to each other, wherein one side of said hook and loop fastener is connected to said donning fastener and extends substantially along the length of said donning fastener and wherein the other side is connected to one of said separating sections, wherein said hook and loop fastener is configured to allow said front panel sections to separate under tension above a pre-determined breakaway threshold when said donning fastener is in a closed position; and

(b) a back panel having a back upper portion and a back lower portion and coupled to said front panel.

US 7,735,151 B1

5

2. The garment of claim 1, wherein said donning fastener is a zipper.

3. The garment of claim 2, wherein said zipper is a separating zipper and one of said sides of said donning fastener includes a first tape of said zipper and another of said sides of said donning fastener includes a second tape of said zipper.

4. The garment of claim 3, wherein either said first tape or second tape of said zipper is attached to any of said at least two panels by a hook and loop fastener.

5. The garment of claim 1, wherein said front panel is coupled to said back panel by a plurality of second safety fasteners.

6. The garment of claim 5, wherein said plurality of second safety fasteners includes a pair of upper safety fasteners configured to connect said upper front portion to said upper back portion.

7. The garment of claim 6, wherein said pair of upper safety fasteners include hook and loop fasteners.

8. The garment of claim 6, wherein said pair of upper safety fasteners are positioned drop-shouldered.

9. The garment of claim 5, wherein said plurality of second safety fasteners includes a pair of lower safety fasteners configured to connect said lower front portion to said lower back portion.

10. The garment of claim 9, wherein said lower safety fasteners include a pair of arms extending between said first panel and said second panel, and positioned to wrap around a wearer's waist.

11. The garment of claim 9, wherein said lower safety fasteners include hook and loop fasteners.

12. The garment of claim 1, further including a tool access defined, at least in part, by either said front or back panel, thereby allowing a wearer to access tools.

13. The garment of claim 12, wherein said tool access has a height of about 7 inches and width of about 8 inches.

6

14. The garment of claim 1, wherein said panels include a high-visibility coloring.

15. The garment of claim 1, wherein said panels include a reflective portion.

16. The garment of claim 1, wherein said garment is a vest.

17. A safety vest comprising:

(a) a front panel formed from a first section and a second section each extending from about the waist and hip region to about the shoulders, said front panel having an upper front portion and a lower front portion;

(b) a zipper having a first tape and a second tape, wherein said first tape is connected to said first section of said panel;

(c) a hook and loop fastener having a first fastener side and a second fastener side, wherein said first fastener side is positioned on said second zipper tape and wherein said second fastener side is connected to said second section of said front panel;

(d) a back panel having

a back upper portion releasably coupled to said front upper portion by a pair of upper second safety fasteners and

a back lower portion releasably coupled to said front lower portion by a pair of lower second safety fasteners, thereby allowing said vest to be donned and secured with said zipper being configured to allow the front panel to break away under tension above a breakaway threshold when said zipper is in a closed position; and

a tool access defined, at least in part, by either said front or back panel, thereby allowing a wearer to access tools.

*   *   *   *   *

## USPTO Patent Assignment Details - US Patent # 7735151

Created:     1/30/2012 3:55 PM

 **United States Patent and Trademark Office**

Home Site Index Search Guides Contacts eBusiness eBiz alerts News Help

Assignments on the Web > Patent Query

### Patent Assignment Details

*NOTE:Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.*

Pages: 3

Reel/Frame: 027477/0086

Recorded: 01/04/2012

Attorney Dkt #: 2921440-2

Conveyance: ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

Total properties: 1

| | | | | |
|---|---|---|---|---|
| 1 | Patent #: 7735151 | Issue Dt: 06/15/2010 | Application #: 11502611 | Filing Dt: 08/10/2006 |
| | Publication #: US20100132091 | Pub Dt: 06/03/2010 | | |
| | Title: BREAKAWAY VEST | | | |

**Assignors**

| | | |
|---|---|---|
| 1 | JOYCE, TAMARA L. | Exec Dt: 12/28/2011 |
| 2 | YOUNG, PHILLIP | Exec Dt: 12/28/2011 |

**Assignee**

1  CAROLINA SAFETY ACQUISITION, LLC
   5305 DISTRIPLEX FARMS DRIVE
   MEMPHIS, TENNESSEE 38141

Correspondence name and address
   WARNER J. DELAUNE
   450 LAUREL STREET
   CHASE NORTH TOWER, 20TH FLOOR
   BATON ROUGE, LA 70801

Search Results as of: 01/30/2012 04:54 PM

If you have any comments or questions concerning the data displayed, contact PRD . Assignments at 571-272-3350. v 2.1
Web interface last modified: Dec 1, 2011 v 2.1

[ HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

Attorney Docket No. 2921440-000002

## ASSIGNMENT

WHEREAS I, Tamara L. JOYCE (hereinafter, "Assignor"), am a co-inventor with Philip YOUNG of the invention entitled:

### BREAKAWAY VEST

as described and claimed in United States Patent Application Serial No. 11/502,611, filed on 10 August 2006 and issued as U.S. Patent No. 7,735,151 on 15 June 2010 (the "Invention"); and

WHEREAS, Carolina Safety Acquisition, LLC, at 5305 Distriplex Farms Drive, Memphis, Tennessee 38141 (hereinafter "Assignee"), wishes to acquire all of the rights, title and interest of Assignor therein to thereby become sole owner of said Invention;

NOW, THEREFORE, be it known that for the sum of $45,000.00 cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, that I, as Assignor, hereby sell, assign, transfer, and set over unto Assignee, its lawful successors and assigns, free of all encumbrances, the entire right, title, and interest of Assignor in, to, and under said Invention and the inventions claimed therein, including: all original, reissued, and reexamined Letters Patent that originate therefrom, all rights of priority on the basis of this Invention, and all applications for Letters Patent which may hereafter be filed for this Invention in any country and all Letters Patent which may be granted on this Invention in any country, all direct and indirect continuation, divisional, continuation-in-part and substitute patent applications that may be filed therefor, and all original, extended, reissued, and reexamined Letters Patent that may issue from said continuation, divisional, continuation-in-part and substitute applications, and all rights under the International Convention for the Protection of Industrial Property, (collectively, the "Patents"), together with the rights to all income derived from said Patents, including the right to sue for past infringement thereof and to recover all damages therefrom for its own use and behalf and for the use and behalf of its successors and assigns or other legal representatives; said Patents to be held and enjoyed by Assignee, its successors and assigns, as fully and entirely as the same would have been held and enjoyed by Assignor if this Assignment had not been made;

AND THAT I AGREE, at the request and expense of Assignee, to perform such proper additional acts, and to execute such additional documents as are deemed necessary by the governmental agencies having jurisdiction over said Patents to effect the transfer of all of the Assignor's right, title and interest therein to Assignee, its successors and assigns. In furtherance thereof, the Assignor hereby authorizes such governmental agencies to identify Assignee as the owner of all Letters Patent issuing from applications pending among said Patents;

AND, I further represent and warrant that I have the full right to convey the interest assigned by this Assignment, and that I have not granted any rights inconsistent with the rights granted herein.

IN WITNESS WHEREOF, I have hereunto set my hand.

State of _North Carolina_   §   Name: Tamara L. JOYCE
                             §   Address: _303 Freemont Drive_
County of _Guilford_         §            _Thomasville NC 27360_
                             §
                             §   Signature: _Tamara L Joyce_
                             §   Date: _11/28/2011_

BEFORE ME, the undersigned authority, on this day personally appeared Tamara L. JOYCE, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this _28_ day of _December_, 20_11_.

[SEAL]
NOTARY PUBLIC
LYNNE GRAY
GUILFORD COUNTY, NC

Notary Public _Lynne Gray_

Notary Printed Name _Lynne Gray_

Commission Expires _2-12-2014_

Attorney Docket No. 2921440-000002

## ASSIGNMENT

WHEREAS I, Philip YOUNG (hereinafter, "Assignor"), am a co-inventor with Tamara L. JOYCE of the invention entitled:

### BREAKAWAY VEST

as described and claimed in United States Patent Application Serial No. 11/502,611, filed on 10 August 2006 and issued as U.S. Patent No. 7,735,151 on 15 June 2010 (the "Invention"); and

WHEREAS, Carolina Safety Acquisition, LLC, at 5305 Distriplex Farms Drive, Memphis, Tennessee 38141 (hereinafter "Assignee"), wishes to acquire all of the rights, title and interest of Assignor therein to thereby become sole owner of said Invention;

NOW, THEREFORE, be it known that for the sum of $45,000.00 cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, that I, as Assignor, hereby sell, assign, transfer, and set over unto Assignee, its lawful successors and assigns, free of all encumbrances, the entire right, title, and interest of Assignor in, to, and under said Invention and the inventions claimed therein, including: all original, reissued, and reexamined Letters Patent that originate therefrom, all rights of priority on the basis of this Invention, and all applications for Letters Patent which may hereafter be filed for this Invention in any country and all Letters Patent which may be granted on this Invention in any country, all direct and indirect continuation, divisional, continuation-in-part and substitute patent applications that may be filed therefor, and all original, extended, reissued, and reexamined Letters Patent that may issue from said continuation, divisional, continuation-in-part and substitute applications, and all rights under the International Convention for the Protection of Industrial Property, (collectively, the "Patents"), together with the rights to all income derived from said Patents, including the right to sue for past infringement thereof and to recover all damages therefrom for its own use and behalf and for the use and behalf of its successors and assigns or other legal representatives; said Patents to be held and enjoyed by Assignee, its successors and assigns, as fully and entirely as the same would have been held and enjoyed by Assignor if this Assignment had not been made;

AND THAT I AGREE, at the request and expense of Assignee, to perform such proper additional acts, and to execute such additional documents as are deemed necessary by the governmental agencies having jurisdiction over said Patents to effect the transfer of all of the Assignor's right, title and interest therein to Assignee, its successors and assigns. In furtherance thereof, the Assignor hereby authorizes such governmental agencies to identify Assignee as the owner of all Letters Patent issuing from applications pending among said Patents;

AND, I further represent and warrant that I have the full right to convey the interest assigned by this Assignment, and that I have not granted any rights inconsistent with the rights granted herein.

IN WITNESS WHEREOF, I have hereunto set my hand.

State of _North Carolina_          §  Name:     Philip YOUNG
                                   §  Address:  _289 Bunt Hollow_
County of _Guilford_               §            _Thomasville, NC 27360_
                                   §
                                   §  Signature: _[signature]_
                                   §
                                   §  Date:      _12-28-2011_

BEFORE ME, the undersigned authority, on this day personally appeared Philip YOUNG, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this _28th_ day of _December_, 20 _11_

```
**************************
*      [SEAL]            *
*   NOTARY PUBLIC        *
*    LYNNE GRAY          *
*  GUILFORD COUNTY, NC   *
**************************
```

Notary Public _Lynne Gray_

Notary Printed Name _Lynne Gray_

Commission Expires _2-12-2014_

**ML Kishigo Patent Infringing Vest Models**

Created:        2/1/2012 3:35 PM



**BRILLIANT** SERIES
**BREAKAWAY & ECONOMY**

**BREAKAWAY VEST**
1505 Lime    |    1506 Orange

**ECONOMY VEST**
1507 Lime    |    1508 Orange

**PERFORMANCE FEATURES:**
• Ultra-Cool™ 100% polyester mesh • Brilliant
Trim reflective edging improves low light visibility
• 5-point breakaway on 1505 & 1506 with breakaway
sides, shoulders and zipper front closure • 2" wide
silver reflective material • Left chest mic tabs

**POCKETS:**
• Left chest radio pocket • Inside left patch pocket
• Inside right chest 2-tier 4-division pencil pocket

**SIZES: M-5X**
ANSI/ISEA 107 Class 2 Compliant







**BRILLIANT** SERIES
**BREAKAWAY VEST**

## 1552 Lime    |    1553 Orange

### PERFORMANCE FEATURES:
• Ultra-Cool™ polyester mesh material • Brilliant
Trim reflective edging improves low light visibility
• 5-point breakaway with breakaway zipper front
closure • 2" wide silver material on 3" contrast

### POCKETS:
• Two outside cargo pockets with grommets and
adjustable flaps • Right chest 2-tier pencil pocket
• Left chest radio pocket • Two large lower inside
pockets

**SIZES: M-5X**

ANSI/ISEA 107 Class 3 Compliant



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV12- 277 DOC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ]  **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X]  **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ]  **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (SBN 160648)
Email: rbecker@manatt.com
BENJAMIN M. KLEINMAN (SBN 261846)
Email: bkleinman@manatt.com
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MANATT, PHELPS & PHILLIPS, LLP
SHARI MULROONEY WOLLMAN (SBN 137142)
Email: swollman@manatt.com
11355 W. Olympic Boulevard
Los Angeles, CA 90064
Telephone:(310) 312-4000
Facsimile:(310) 312-4224

Attorneys for plaintiffs: M. L. KISHIGO MANUFACTURING
COMPANY, a California corporation,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. L. KISHIGO MANUFACTURING COMPANY, a California corporation,<br><br>PLAINTIFF(S)<br><br>V.<br><br>CAROLINA SAFETY ACQUISITION, LLC, a Tennessee corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV12-277-DOC (MLG)<br><br><br>**SUMMONS** |

CV-01A (12/07)                                      SUMMONS

American LegalNet, Inc.
www.USCourtForms.com

TO:DEFENDANT(S): **CAROLINA SAFETY ACQUISITION, LLC, a Tennessee corporation,**

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney,

**ROBERT D. BECKER (SBN 160648)**
Email:  rbecker@manatt.com
**BENJAMIN M. KLEINMAN (SBN 261846)**
Email:  bkleinman@manatt.com
**1841 Page Mill Road, Suite 200**
**Palo Alto, CA 94304-1006**
**Telephone:  (650) 812-1300**
**Facsimile:  (650) 213-0260**

**Manatt, Phelps & Phillips, LLP**
**SHARI MULROONEY WOLLMAN (SBN 137142)**
Email:  swollman@manatt.com
**11355 W. Olympic Boulevard**
**Los Angeles, CA  90064**
**Telephone: (310) 312-4000**
**Facsimile:  (310) 312-4224**

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: FEB 2 1 2012

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**SUMMONS**

American LegalNet, Inc.
www.USCourtForms.com

MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (SBN 160~ .3)
Email: rbecker@manatt.com
BENJAMIN M. KLEINMAN (SBN 261846)
Email: bkleinman@manatt.com
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MANATT, PHELPS & PHILLIPS, LLP
SHARI MULROONEY WOLLMAN (SBN 137142)
Email: swollman@manatt.com
11355 W. Olympic Boulevard
Los Angeles, CA 90064
Telephone:(310) 312-4000
Facsimile:(310) 312-4224
Attorneys for plaintiffs: M. L. KISHIGO MANUFACTURING
COMPANY, a California corporation,

COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. L. KISHIGO MANUFACTURING COMPANY, a California corporation, <br><br> PLAINTIFF(S) <br><br> V. <br><br> CAROLINA SAFETY ACQUISITION, LLC, a Tennessee corporation, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> SACV12-277-DOC (MLGx) <br><br> **SUMMONS** |

American LegalNet, Inc.
www.USCourtForms.com

TO:DEFENDANT(S): **CAROLINA SAFETY ACQUISITION, LLC, a Tennessee corporation,**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney,

**ROBERT D. BECKER (SBN 160648)**
Email: rbecker@manatt.com
**BENJAMIN M. KLEINMAN (SBN 261846)**
Email: bkleinman@manatt.com
**1841 Page Mill Road, Suite 200**
**Palo Alto, CA 94304-1006**
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

**Manatt, Phelps & Phillips, LLP**
**SHARI MULROONEY WOLLMAN (SBN 137142)**
Email: swollman@manatt.com
**11355 W. Olympic Boulevard**
**Los Angeles, CA 90064**
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ FEB 2 1 2012 _____     By: _____ MARY GAVIS _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| M. L. KISHIGO MANUFACTURING COMPANY, a California corporation, | CAROLINA SAFETY ACQUISITION, LLC, a Tennessee corporation, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Manatt, Phelps & Phillips, LLP<br>ROBERT D. BECKER (SBN 160648)<br>Email: rbecker@manatt.com<br>BENJAMIN M. KLEINMAN (SBN 261846)<br>Email: bkleinman@manatt.com<br>1841 Page Mill Road, Suite 200<br>Palo Alto, CA 94304-1006<br>Telephone: (650) 812-1300<br>Facsimile: (650) 213-0260<br><br>Manatt, Phelps & Phillips, LLP<br>SHARI MULROONEY WOLLMAN (Bar No. CA 137142)<br>Email: swollman@manatt.com<br>11355 W. Olympic Boulevard<br>Los Angeles, CA 90064<br>Telephone:(310) 312-4000<br>Facsimile:(310) 312-4224 | |

COPY

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** To be determined at trial

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
35 U.S.C 271, 35 U.S.C. §§ 102, 103 and/or 112

**VII. NATURE OF SUIT** (Place an X in one box only.)

SACV12-277

American LegalNet, Inc.<br>www.FormsWorkflow.com

**OTHER STATUTES**

- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Act
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Info. Act
- [ ] 900 Appeal of Fee Determi- nation Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**

- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**

- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury- Med Malpractice
- [ ] 365 Personal Injury- Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**

- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus- Alien Detainee
- [ ] 465 Other Immigration Actions

**TORTS**

**PERSONAL PROPERTY**

- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**

- [ ] 22 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**

- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Acco- mmodations
- [ ] 444 Welfare
- [ ] 445 American with Disabilities – Employment
- [ ] 446 American with Disabilities – Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**

- [ ] 510 Motions to Vacate Sentence Habeas Corpus
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus/ Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE / PENALTY**

- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R.& Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety /Health
- [ ] 690 Other

**LABOR**

- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**

- [ ] 820 Copyrights
- [x] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**

- [ ] 61 HIA(1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW 405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

---

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Shelby County, TN |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ~~Throughout this District~~ Orange and Los Angeles county | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _Shari Mulrooney Wollman_      Date February 21, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com